ADRIEN J. LAPOINTE *vs.* LICENSE BOARD OF WORCESTER.

Worcester.   February 8, 1983. — June 14, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*License. Notice. Due Process of Law*, Notice, Vagueness of statute, Regulation of economic activity. *Quasi Judicial Tribunal. Administrative Law*, Hearing, Evidence. *Junk Dealer. Words*, "At . . . pleasure."

A dealer in secondhand articles received constitutionally adequate notice of a city license board's proceeding to revoke his license, where the board informed the dealer, at a meeting to which he had been summoned by letter, that it proposed to revoke his license for failing to maintain proper records and for purchasing stolen merchandise, and that he would be granted one week to prepare for a hearing on the matter. [458-459]

The record of a license revocation hearing before a city's license board did not support the license holder's contention that he was denied a fair hearing due to bias exhibited by the board's chairman in his questioning of a witness and in his statements expressing skepticism concerning several of the witness's answers.  [459]

At a license revocation hearing before a city's license board, there was substantial evidence, even apart from certain hearsay statements which the board considered, to support the board's decision to revoke the license of a dealer in secondhand articles for purchasing stolen merchandise which, with reasonable investigation, could have been determined to be stolen.  [459-460]

In an action seeking judicial review of a decision of a city's license board to revoke a license to deal in secondhand articles, there was no merit to the license holder's contention that the judge erred by excluding certain evidence which would have demonstrated that he had been singled out by the board for inequitable treatment.  [460]

General Laws c. 140, § 54, authorizing cities and towns to promulgate ordinances for the licensing and regulation of junk dealers was not unconstitutionally vague as applied to a license holder whose license was revoked on the grounds that he failed to keep proper and complete records, and purchased stolen merchandise which, with reasonable investigation, could have been determined to have been stolen, where the applicable ordinance provided the license holder with notice of his duties to keep proper records and the municipal license board with sufficient guidelines to determine whether proper records had been kept,

and where the board did not act arbitrarily in determining that the license holder had failed to make a reasonable investigation to determine whether the goods had been stolen. [460-463]

CIVIL ACTION commenced in the Superior Court Department on March 6, 1981.

The case was heard by *Meagher, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Thomas J. Donahue, Jr. (Shirley A. Doyle* with him) for the plaintiff.

*William F. Scannell, Jr.,* Assistant City Solicitor (*Robert J. Hennigan, Jr.,* with him) for the defendant.

LIACOS, J. The plaintiff, Adrien J. LaPointe, commenced this action in the Superior Court pursuant to G. L. c. 249, § 4, seeking judicial review of the decision of the License Board of Worcester (board) to revoke his license to deal in junk, old metals, and secondhand articles. G. L. c. 140, § 54. He also sought a declaration of rights declaring G. L. c. 140, § 54, and c. 12 of the Revised Ordinances of the City of Worcester (1974) (Revised Ordinances) unconstitutional for vagueness. He also sought to overturn the decision of the board because of its failure to provide him procedural due process. After a hearing, a judge of the Superior Court affirmed the board's action and found the challenged statute and ordinance to be valid as permissible exercises of the police power. LaPointe filed a timely notice of appeal. We transferred the case to this court on our own motion, and now affirm.

On February 9, 1981, LaPointe, who was a licensed dealer in junk, old metals, and secondhand articles, received a letter from the board stating that a hearing would be held before them on February 19, 1981, pertaining to his license. The letter did not indicate the reason for the hearing. LaPointe was informed at the hearing that the subject of the inquiry was the purchase by his wife, Luan LaPointe, of certain rings which were alleged to have been stolen by

one Kevin Johnson. A statement which Johnson made to the police concerning the purchase was also read. The police previously had taken the matter up with LaPointe shortly after the purchase in November, 1980.

LaPointe sought a continuance of the hearing. The board granted him a continuance of one week, to February 26, 1981. LaPointe objected, stating that he could not attend on that date due to his prior plan to attend a coin show in Washington, D.C. He asked for a continuance of two weeks. The board refused to extend further the date for hearing. On February 26, 1981, LaPointe's wife, Luan, appeared at the hearing with counsel. Evidence was presented by an officer of the Worcester police department who read a statement by Johnson concerning the sale of stolen rings by Johnson to LaPointe's wife. In that statement Johnson stated that he sold certain stolen rings to Luan LaPointe on November 18, 1980. Luan LaPointe testified that Johnson wanted to sell her six or seven rings, but that she only bought three of them. She denied knowledge that the rings were stolen. She testified that her records indicated that Johnson also had sold her "scrap gold" on October 2, 1980.

On March 3, 1981, the board notified LaPointe of the revocation of his license based on two grounds: (1) failing to keep proper and complete records, and (2) purchasing stolen merchandise which, with reasonably proper investigation, could have been determined to be stolen.[1]

LaPointe then filed this action in the Superior Court. A hearing was held on May 20, 1982. Testimony indicated that LaPointe's wife had purchased certain articles of jewelry from Kevin Johnson and had failed to describe adequately the articles as required by c. 12 of the Revised Ordinances. The judge made findings of fact, affirmed the

---

[1] Criminal complaints based on the November 18, 1980, purchase of the rings from Johnson were later filed against the LaPointes. These complaints, except one which was placed on file, resulted in findings of not guilty.

board's action, and held the challenged statute and ordinance to be constitutional.[2]

We consider LaPointe's claims of error. LaPointe argues that c. 12 of the Revised Ordinances violates G. L. c. 214, § 1B, as well as the Fourth and Fifth Amendments to the United States Constitution. These issues were never raised below. As a consequence, they are not properly before us. *International Fidelity Ins. Co.* v. *Wilson,* 387 Mass. 841, 851 (1983).

LaPointe presents several arguments to the effect that he was denied due process of law. At the outset, he argues that he received insufficient notice of the proceedings.[3] Addi-

---

[2] Chapter 12 of the Revised Ordinances, promulgated under the authority of G. L. c. 140, § 54, provides, in relevant part:

"*Section 1:* No person shall carry on a business of . . . keeper of the shop for the purchase, sale or barter of junk, old metals, or secondhand articles unless he is duly licensed therefor . . . . The fee for the license shall be $50.00.

"*Section 2.* Every . . . keeper of a shop . . . shall keep a book, in which shall be written at the time of receiving any article . . . a description of the same, the name, age and residence of the person from whom purchased and the day and hour when he received or purchased it. Such book shall at all times be open to the inspection of the city manager, the license board, any person by them authorized to make such inspection and the members of the police force.

". . . .

"*Section 4.* All articles . . . purchased by persons licensed under the provisions of section 1 . . . may be examined by the city manager, the license board, any person authorized by them to make such examination or any member of the police force, at all times."

General Laws c. 140, § 54, provides, in part: "Cities . . . by ordinance . . . may provide for the licensing . . . by the aldermen . . . and by the selectmen in towns, of suitable persons to be collectors of, dealers in or keepers of shops for the purchase, sale or barter of junk, old metals or second hand articles, may make rules and regulations relative to their business, and may provide for the supervision thereof. Said licensing board or officer may, except as otherwise provided in such ordinance or by-law, make additional rules, regulations and restrictions which shall be expressed in all licenses. Said licenses may be revoked at pleasure, and shall be subject to sections two hundred and two to two hundred and five, inclusive . . . ."

[3] The board does not concede that LaPointe possessed a property interest in his license sufficient to invoke the protection of the due process clause of the Fourteenth Amendment to the United States Constitution. See

tionally, he claims that the board should have granted him a continuance of two weeks, and that the board should have provided him with any statements or documents which were to be used against him at the hearing. We reject both claims.[4]

Due process requires that, in any proceeding to be accorded finality, notice must be given that is reasonably calculated to apprise an interested party of the proceeding and to afford him an opportunity to present his case. *Konstantopoulos* v. *Whately,* 384 Mass. 123, 133 (1981). The letter of February 9, 1981, may have been constitutionally deficient since it gave no notice of grounds on which the board intended to proceed. That deficiency, however, was cured at the first meeting with the board on February 19 when LaPointe, with his counsel present, received precise notice of the subject matter of the proceedings. At that time, the board provided LaPointe with an adequate notice and adequate time in which to prepare for the hearing. It was under no constitutional obligation to hold the hearing on a date which would not conflict with LaPointe's personal schedule.[5] Nor was the board required to turn over the statements and documents which were to be introduced at the hearing. Due process requires notice of the grounds on which the board might act rather than the evidentiary support for those grounds. Cf. *United States* v. *Agurs,* 427 U.S.

---

*Konstantopoulos* v. *Whately,* 384 Mass. 123, 132-133 (1981). It, however, has not put before us an argument on the point. We will, therefore, assume that a junk dealer's license, once granted, is a property right.

[4] LaPointe does not argue that the failure of the statute to establish procedural safeguards rendered it unconstitutional. In the past, we have construed licensing statutes to require notice and a hearing even where the statute did not explicitly require them. See *Konstantopoulos* v. *Whately, supra* at 135 & n.9.

[5] We note that LaPointe told the board at the initial hearing that he would be represented fully by his wife at the second hearing. It was her testimony that was relevant to the board's inquiry. LaPointe has not claimed that he would have testified at the second hearing, or that he had any material evidence to provide. We perceive no prejudice to him from his absence.

97, 112 n.20 (1976); *Foster from Gloucester, Inc.* v. *City Council of Gloucester,* 10 Mass. App. Ct. 284, 289-290, 293 (1980). It also appears that Johnson's statement was brought to the attention of LaPointe and his counsel at the initial hearing. LaPointe received what process was due.

Next, LaPointe argues that the chairman of the board exhibited bias and improperly acted as a prosecutor by directing questions of Luan LaPointe. A transcript of the hearing reveals that the chairman of the board did question Luan LaPointe and expressed skepticism concerning several of her answers. These actions by the chairman did not deprive LaPointe of a fair hearing.

There is every presumption in favor of the honesty and sufficiency of the motives actuating public officers in actions ostensibly taken for the general welfare. *Foster from Gloucester, Inc.* v. *City Council of Gloucester, supra* at 293-294. The questioning of a witness by one member of the board and a statement of his views concerning the evidence does not constitute a denial of procedural due process. Even in a trial before a jury, a judge may question a witness. *Commonwealth* v. *Fiore,* 364 Mass. 819, 827 (1974). Proposed Mass. R. Evid. 614 (b). Such questions may be particularly appropriate in an administrative hearing because they afford a party an opportunity to respond to the concerns of the decisionmaker. Further, LaPointe was permitted to cross-examine witnesses, conduct direct examination of his own witnesses, and argue the merits of his case to the board.

LaPointe also argues that the decision of the board rested on inadmissible hearsay. The mere admission of hearsay before an administrative board is not a denial of procedural due process. See *Moran* v. *School Comm. of Littleton,* 317 Mass. 591, 595-598 (1945); *Boylston-Washington, Inc.* v. *Alcoholic Beverages Control Comm'n,* 8 Mass. App. Ct. 396, 400 (1979). Cf. G. L. c. 30A, § 11 (2). There was substantial evidence even apart from the hearsay statements of Johnson to support the board's decision. The fact that

LaPointe failed to compile adequate records is undisputed. The listing of the rings as "scrap gold" clearly did not meet the explicit requirements of c. 12 of the Revised Ordinances. Luan LaPointe also testified that Johnson arrived with seven rings and that he previously had sold certain gold items to her. The circumstances of the sale were sufficient to support the board's finding that she purchased stolen merchandise which, with reasonably proper investigation, could have been determined to be stolen.

LaPointe next argues that the judge erred by excluding evidence that the board stayed any action concerning the revocation of two other licenses pending the resolution of criminal complaints lodged against those licensees. La-Pointe contends that this evidence demonstrated that he was singled out for inequitable treatment. We disagree.

First, at the time of the hearing before the board, no criminal complaints had been lodged against either La-Pointe or his wife. Thus, the board had little reason to stay its proceedings. Second, LaPointe's assumption that the board would have been bound by the outcome of the criminal complaints is erroneous. See *Commissioners of Civil Serv.* v. *Municipal Court of the Brighton Dist.*, 369 Mass. 166, 173-174 (1975), cert. denied sub nom. *Patuto* v. *Commissioners of Civil Serv.*, 429 U.S. 845 (1976); *Commissioners of Civil Serv.* v. *Municipal Court of the City of Boston*, 359 Mass. 211, 213 n.1 (1971). Third, one of the complaints appears to have been placed on file. Such a disposition is not the equivalent of a finding of not guilty. Accord *Commonwealth* v. *Bianco*, 388 Mass. 358, 364-365 (1983). There was no error.

LaPointe's last claim is that G. L. c. 140, § 54, which authorizes cities and towns to promulgate ordinances for the licensing and regulation of junk dealers, is vague and over-broad. He argues that it impermissibly delegates to the board, without any standards, absolute discretion over the licensing and regulation of junk dealers. We limit our discussion to whether G. L. c. 140, § 54, is unconstitutionally vague, as applied in this case. Since the statute merely

regulates business activity and does not intrude upon any First Amendment freedoms, we need not consider whether the statute might be unconstitutionally vague in other circumstances. See *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983).

We turn first to consider whether the board's reliance on the failure to keep records as mandated by c. 12 of the Revised Ordinances rendered the statute unconstitutionally vague, as applied. Since that failure may subject one to criminal prosecution, G. L. c. 140, § 55; G. L. c. 266, § 142A, we apply a criminal standard. *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 925 (1980). The question is whether LaPointe had sufficient warning and the enforcement authorities had sufficient guidelines from the statute, regulations construing it, or prior decisions of this court, to determine whether the conduct of LaPointe or his wife provided grounds for revocation of his license. *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd., supra* at 926. Accord *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 552 (1978).

The statute, as applied to LaPointe, is not impermissibly vague. Section 2, c. 12, of the Revised Ordinances provided LaPointe with sufficient notice of his duties as a licensee and the board with sufficient guidelines to determine whether a licensee had complied with his duties. Contrary to LaPointe's suggestion, the mere fact that the duties of a licensee in another city or town might be different did not render the statute, as applied, vague. Violation of § 2 provided objective standards for the exercise of the board's power to revoke LaPointe's license.[6]

We turn next to consider whether the board's reliance on Mrs. LaPointe's purchase of stolen property which, with

---

[6] Chapter 12 of the Revised Ordinances did not explicitly provide that a license could be revoked for failing to comply with its provisions. We, however, feel that the ordinance, together with the provisions of G. L. c. 140, § 54, provides LaPointe with sufficient notice that failure to comply with c. 12 could result in the revocation of his license.

reasonable investigation could have been determined to be stolen, rendered the statute, as applied, unconstitutionally vague. Since the failure to make a reasonable investigation alone does not subject one to criminal liability, *Commonwealth* v. *Boris*, 317 Mass. 309, 315-317 (1944), see G. L. c. 266, § 60, we apply a civil standard. *Caswell* v. *Licensing Comm'n for Brockton, supra.*

As a general matter, a statute which merely regulates business interests need not specify with great particularity the relevant considerations with respect to whether to revoke a license. See *Papachristou* v. *Jacksonville*, 405 U.S. 156, 162 (1972); *Caswell* v. *Licensing Comm'n for Brockton, supra* at 875. It is enough that the board exercise its discretion fairly and not act in an arbitrary and capricious manner. *Id.* Cf. *Arnett* v. *Kennedy*, 416 U.S. 134, 158-164 (1974) (provision providing for removal of certain Federal employees "for such cause as will promote the efficiency of the service" (5 U.S.C. § 7501[a] [1976]), held not to be unconstitutionally vague). As measured by this standard, G. L. c. 140, § 54, is not unconstitutionally vague.

The power under G. L. c. 140, § 54, to revoke licenses at the "pleasure" of appropriate authorities may not be exercised arbitrarily. We have construed similar language in other licensing statutes "to mean, 'in the exercise of a wise discretion.'" *Marrone* v. *City Manager of Worcester*, 329 Mass. 378, 379 (1952), quoting *Commonwealth* v. *McGann*, 213 Mass. 213, 215 (1913). See *Caswell* v. *Licensing Comm'n for Brockton, supra*; *Turnpike Amusement Park, Inc.* v. *Licensing Comm'n of Cambridge*, 343 Mass. 435, 437-438 (1962). We have said also that the objectives of § 54 "are to determine what persons shall be engaged in the business and to make it possible that junk, old metals and second hand articles stolen may be traced and restored to their owners, and that the thief may be detected and convicted." *Commonwealth* v. *Silverman*, 220 Mass. 552, 554 (1915). *Commonwealth* v. *Hood*, 183 Mass. 196, 197 (1903). The actions of a licensing authority must be calculated to achieve these objectives. In the instant case, the

board's actions did so. Permitting a junk dealer who freely purchases property which a reasonable person would suspect to be stolen, without making proper records, would hardly encourage the restoration of stolen items of property to their true owners or the detection of thieves.

*Judgment affirmed.*