FRANK STRASNICK & another[1] *vs.* BOARD OF
REGISTRATION IN PHARMACY.

Suffolk. October 1, 1990. - November 26, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Pharmacy. Board of Registration in Pharmacy. Controlled Substances.
Statute,* Construction. *Notice,* Timeliness. *Due Process of Law,* Notice,
Hearing, Vagueness of regulation. *Administrative Law,* Hearing, Evi-
dence, Substantial evidence, Regulations. *Regulation.*

The provisions of G. L. c. 112, § 27, establishing a six-month limitation
period within which an aggrieved third party may make a complaint to
the Board of Registration in Pharmacy, did not limit the time within
which the board could take action based on its own investigation, pur-
suant to G. L. c. 112, §§ 42A and 61. [657-660]

In the circumstances of a disciplinary proceeding before the Board of Re-
gistration in Pharmacy, the notice afforded to the parties by the order
to show cause was adequate under G. L. c. 30A and in accordance with
the requirements of due process of law. [660-661]

The evidence at a hearing before the Board of Registration in Pharmacy
was sufficient for the board reasonably and properly to have concluded
that two pharmacists dispensed a controlled substance for other than a
legitimate medical purpose, in violation of G. L. c. 94C, § 19. [661-
663]

In the circumstances of a disciplinary hearing before the Board of Regis-
tration in Pharmacy, no error was demonstrated by the board's refer-
ence to and recognition of the United States Pharmacopeia in 247 Code
Mass. Regs. § 7.00 (20) (a), (b) & (c). [663-665]

The evidence at a disciplinary hearing before the Board of Registration in
Pharmacy supported the board's conclusion that a pharmacist had an
obligation, in the circumstances, under 247 Code Mass. Regs. § 4.04
(b), to notify the board when he assumed the management of a retail
pharmacy. [665-667]

[1]Stephen Strasnick.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 9, 1987.

The case was reported by *Nolan*, J.

*Mark S. Tilden* for the plaintiffs.

*William L. Pardee*, Assistant Attorney General, for the defendant.

ABRAMS, J. Pursuant to G. L. c. 112, § 64, the plaintiffs, Frank and Stephen Strasnick, appealed to a single justice from a decision of the Board of Registration in Pharmacy (board) suspending their licenses[2] and placing the Strasnicks on probation for two years. The Strasnicks' complaint alleged that (1) the board's action was not timely; (2) the board failed to give them adequate notice of the charges; (3) there was insufficient evidence before the board to warrant the board's conclusion that they violated G. L. c. 94C, § 19; (4) the board's reference to the United States Pharmacopeia was erroneous; and (5) it was error for the board to determine that Stephen Strasnick should have notified the board when he took over the daily management of the pharmacy. The single justice reserved and reported this matter to the full court. We affirm the decision of the board.

Frank and Stephen Strasnick are registered pharmacists. Frank Strasnick is the owner of the Bra-Wey Pharmacy, Inc., in Braintree, and is registered as the manager of the pharmacy. Stephen Strasnick has taken over the daily management of the pharmacy in recent years.

In the spring of 1985, the United States Drug Enforcement Administration (DEA) and the diversion investigation unit of the Massachusetts State Police conducted an investigation of a South Shore weight loss clinic run by a physician. This physician was suspected of prescribing dextroamphetamine[3] for other than legitimate medical purposes.

---

[2]Frank Strasnick's license was suspended for six months; Stephen Strasnick's license was suspended for three months with the suspension stayed.

[3]Dextroamphetamine is a Schedule II controlled substance. G. L. c. 94C, §§ 2, 3 (1988 ed.). 105 Code Mass. Regs. § 700.002 (B). Schedule II controlled substances have accepted medical uses, but are addictive and have a high potential for abuse. G. L. c. 94C, § 3 (2).

On May 16, 1985, in the course of that investigation, Agent John Crowley of the DEA conducted an administrative search of the Bra-Wey Pharmacy. Crowley, together with an investigator from the board, a local police officer, and a State trooper, seized the pharmacy's records for Schedule II drugs dispensed between May, 1983, and May, 1985, a total of 12,944 prescriptions. Crowley analyzed the seized prescriptions and filed his report of the investigation of the pharmacy with the investigative unit of the division of registration on November 11, 1985. Crowley's analysis revealed the following patterns of practice: during the two-year period examined, the Bra-Wey Pharmacy dispensed more amphetamines than any other pharmacy in the nation. All but 413 of the Schedule II prescriptions seized were for amphetamines and were written by the same doctor. In a sample of sixty-four out of the total of 546 patients, all had received more than a ten-month supply of amphetamines during the two-year period, and thirty had received at least a twenty-month supply. Several patients received more than one thirty-day supply within the same thirty-day period. An investigator at the board reviewed the DEA report and filed his own report with the board on December 6, 1985. On January 31, 1986, the board issued an order to show cause pursuant to its authority under G. L. c. 112, §§ 40, 42, and 61, and on February 26, 1986, it issued an amended order to show cause. Hearings were held on March 25, July 22, and September 23, 1986. On March 10, 1987, the board determined that the Strasnicks had violated G. L. c. 94C, § 19 (a), by filling prescriptions for a controlled substance which were not issued for a legitimate medical purpose, that they had violated 247 Code Mass. Regs. § 7.00 (20) (b) by failing to dispense a controlled substance in accordance with the dispensing information set forth in the United States Pharmacopeia (USP), and that they had violated 247 Code Mass. Regs. § 4.04 (6) by failing to notify the board of a

change in management from Frank Strasnick to Stephen Strasnick.[4]

1. *Timeliness of the board's action.* The Strasnicks rely on G. L. c. 112, § 27, which says in relevant part that "[t]he board shall hear all complaints made to it against any person registered as a pharmacist charging him in his business as a pharmacist with violating any of the rules or regulations of the board . . . . Such complaints shall set out the offence alleged, and be made within six months after the date of the act complained of." G. L. c. 112, § 27 (as appearing in 1986 ed.).[5] They argue that the board's order to show cause was not timely because more than six months elapsed between the date that the last of the prescriptions at issue was filled and the date that the DEA filed its report with the board. From those facts, the Strasnicks conclude that the action by the board is time barred by G. L. c. 112, § 27. We do not agree.[6]

"When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute: otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated." *Negron* v. *Gordon,* 373 Mass. 199, 201 (1977), quoting *Hol-*

---

[4]"The conclusory nature of the petitioners' brief is such that it [does not comply] with the rule that the argument in an appellant's brief 'shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.' Mass. R. A. P. 16 (a) (4), 365 Mass. 860 (1974)." *Beaton* v. *Land Court,* 367 Mass. 385, 389 (1975). Nevertheless, we consider their contentions to determine whether the Strasnicks are entitled to relief.

[5]In 1987, following a recommendation of the Executive Office of Consumer Affairs and Business Regulation, the Legislature amended this section, eliminating all reference to a time period between an act and a complaint submitted to the board. St. 1987, c. 414.

[6]We note that in their brief the Strasnicks assume that the report filed by the DEA on November 11, 1985, is a third-party complaint. Further, they appear to assume that the board brought this proceeding pursuant to § 27. The board's order indicates· that it was brought pursuant to G. L. c. 112, §§ 40, 42A, and 61.

*brook* v. *Holbrook*, 1 Pick. 248, 250 (1823). We look, therefore, to the entire statute to determine whether the time limitation of § 27 bars the board's action. Chapter 112 contains three sections governing the board's authority to oversee the practice of pharmacy: §§ 27, 42A, and 61 as appearing in 1986 ed.[7]

The statutory sections under which the board acted, namely, §§ 42A and 61, do not contain any time limitation. Section 42A allows the board to make such rules and regulations as it deems necessary to enable it to enforce the laws pertaining to pharmacy. That section empowers the board to suspend or revoke any certificate, license, registration, or permit to practice pharmacy for any violation of such rules and regulations, after the holder has received due notice and a hearing.

Section 61 applies to all the boards of registration, and allows each board to suspend or revoke any license or registration if it appears to the board that the holder is guilty of deceit, malpractice, gross misconduct, or a violation of law. A hearing must be held before a board takes such action, and the board may make rules for filing charges and conducting the hearings.

Sections 61 and 42A each give separate authority to the board to investigate, to hold hearings, and to impose disciplinary measures. The board may take such actions without any necessity for a third-party complaint. Sections 42A and 61 are both broad statutory grants of power to the board to oversee and regulate the practice of pharmacy by investigating, holding hearings, and imposing discipline. Neither provision contains any time limit on the board's actions. Neither provision makes any reference to "complaints." General

---

[7]Section 40, as amended by St. 1986, c. 97, § 5, empowers the board to revoke or suspend a pharmacy's registration and permit. We do not discuss it here because it is not relevant to the board's decision to suspend the licenses of individual pharmacists.

Sections 27 and 61 have since been amended. See St. 1987, c. 414, and c. 522, § 3.

Laws c. 112, § 27, does contain a time limitation. The issue is whether that limitation also applies to § 42A and § 61.

"In interpreting ambiguous legislation, courts may look to the legislative history, including the Governor's message, as an aid in arriving at a proper construction of the statute." *Boston* v. *Massachusetts Bay Transp. Auth.*, 373 Mass. 819, 826 n.9 (1977). The history of G. L. c. 112, § 27, does not support the Strasnicks' claim that the board is limited to a six-month period under § 42A and § 61. In 1976, the Legislature extended the time limit in § 27 from sixty days to six months. See St. 1977, c. 444. The six-month time period was the result of a recommendation by the Governor as a compromise between a shorter time limit and an abolition of the time limit. The Governor included in his recommendation of the six-month limit an explanation as to why a longer period was appropriate: "[A] 60 or 90-day deadline does not allow the average person, who probably is not very familiar with the regulatory process and who may not even be aware of his right to file a complaint, [sufficient time] to act." Message from the Governor, 1976 House Doc. No. 5057. The recommendation of the Governor was adopted by the Legislature. St. 1977, c. 444. The legislative action indicates that the time limit in § 27 applies to complaints that the "average person" makes to the board. Section 27 thus offers pharmacists protection against stale complaints from consumers and allows consumers a reasonable but brief time period within which to complain to the board about pharmacists.

As we read the legislative scheme, the Board of Registration in Pharmacy has the power to adopt a code of professional conduct, to decide when these professional standards have been violated, and to discipline any violations. G. L. c. 112, § 42A (1988 ed.). This broad grant of power to oversee bears a close resemblance to the corresponding section of c. 112, which governs the regulatory and disciplinary powers of the Board of Registration in Medicine. See G. L. c. 112, § 5, as amended. From this similarity, we conclude that the Legislature granted broad powers to the Board of Registration in Pharmacy for the same reason they were granted to

the Board of Registration in Medicine: in order to "promote the public health, welfare, and safety." G. L. c. 112, § 5 (1986 ed.). A six-month limitation on the board's ability to investigate and take action would not serve those purposes in many instances.

Because § 27 limits action by the board only where an aggrieved third party has made a complaint to the board, we conclude that the limitation in § 27 does not bar action by the board based on its own investigation pursuant to § 42A and § 61 in this case.

2. *Adequacy of notice.* The Strasnicks filed motions for specifications, both before the hearings and at the beginning of each hearing, asking the board to identify which of the approximately 13,000 prescriptions seized were at issue. These motions were denied. The Strasnicks claim that denial of these motions forced them to guess which prescriptions were alleged to have been improperly filled, and that they were thus forced to proceed without fundamental information necessary to frame their defense. They claim that the board's procedure was a violation of G. L. c. 30A and deprived them of their constitutional rights to due process. We do not agree. We conclude that the board's procedure did not deny the Strasnicks reasonable notice of the substance of the issues and a chance to prepare their defense.

A State administrative agency conducting an adjudicatory proceeding is required to give to all parties "[r]easonable notice" that is sufficient "to afford them reasonable opportunity to prepare and present evidence and argument." G. L. c. 30A, § 11 (1986 ed.). "Due process requires that, in any proceeding to be accorded finality, notice must be given that is reasonably calculated to apprise an interested party of the proceeding and to afford him an opportunity to present his case." *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 458 (1983), citing *Konstantopoulos* v. *Whately*, 384 Mass. 123, 133 (1981). While the State statute and constitutional principles require an agency to be reasonable and to comply with standards of "natural justice and fair play," administrative hearings need not comport with any particular form.

*Langlitz* v. *Board of Registration of Chiropractors,* 396 Mass. 374, 377 (1985). As long as an agency gives adequate notice of the grounds for the hearing, it is not required to turn over all the evidence it will introduce to support those grounds. *Langlitz, supra* at 377. *LaPointe, supra* at 458.

The Strasnicks received notice in the order to show cause that they were charged with violating G. L. c. 94C, § 19, by filling prescriptions written by a specified doctor for a specified drug, with violating 247 Code Mass. Regs. § 7.00 (20) (b) by dispensing a specified drug in contravention of the dispensing information in the United States Pharmacopeia, and with violating 247 Code Mass. Regs. § 4.04 (6), see *infra,* by failing to notify the board of a change in management. The order invited the Strasnicks to review the board's records at their convenience. The board told the Strasnicks' attorney that they could meet with the board's investigator. The three days of hearings were spread out over a period of six months, during which time the Strasnicks had ample opportunity to examine the DEA's analysis and summary of the seized prescriptions.

The order gave the Strasnicks notice of the statutory and regulatory basis of the charges against them and the substance of the evidence which would be introduced to support those charges. Further, the board offered the Strasnicks an opportunity to review the evidence the board had in its possession and to meet with its investigator. Even if the order had not constituted adequate notice, the Strasnicks had two months between the second day of hearings, on which the board finished presenting its evidence, and the third day of hearings, when the Strasnicks put forth their defense. Any defect in notice was cured by the opportunity which the Strasnicks had during those two months to prepare a defense to the charges as they were elaborated at the hearings. See *LaPointe, supra* at 458. There was no error.

3. *Sufficiency of evidence under G. L. c. 94C, § 19.* The Strasnicks allege that the board erred in finding a violation of G. L. c. 94C, § 19. They assert that "[t]he thrust of the Board's complaint is that the [petitioners] should not have

dispensed Dextroamphetamine for more than eight weeks continuous therapy," and that there is "no statutory or regulatory provision that restricts Dextroamphetamine to eight weeks therapy." The Strasnicks conclude that without such a statutory or regulatory provision setting a specific time limit on dextroamphetamine therapy the board could not be justified in any finding that the drug was not dispensed for a "legitimate medical reason."

In adjudicating a charge of prescribing or dispensing drugs for other than a legitimate medical purpose the board may consider the evidence of the pharmacist's dispensing practices in light of all the facts and circumstances attending the prescriptions. *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 309 (1981). The dispensing of additional medication within the time period that was covered by an earlier prescription may be used as evidence that the medication was not dispensed for a legitimate medical purpose. See *Arthurs*, *supra* at 309. While the board may not use its technical expertise as a substitute for evidence at the hearing, it may use its expertise in evaluating the evidence that is adduced at the hearing. *Id.* at 310.

The evidence before the board as to proper medical uses of dextroamphetamine included an open acknowledgement by the Strasnicks that dextroamphetamine is addictive and potentially subject to abuse. There was testimony that dextroamphetamine is effective for weight control only for short periods of time, and that the drug should not be dispensed for more than a few months without a break in therapy. The board has issued an administrative guideline in a newsletter which set the maximum acceptable period for use in weight loss therapy at eight weeks.[8]

---

[8]The board included the publication, dissemination, and contents of this newsletter in its findings of fact. The Strasnicks object because the newsletter was not introduced in evidence at the hearing. It is clear that "[i]f an agency wishes to rely on a fact, that fact must be established by evidence in the record. . . . [T]he board must make certain that sufficient evidence is in the record for a court to review the evidence on which the agency relies." *Arthurs*, *supra* at 310. There was testimony at the hearing, however, as to the contents of the guidelines, and the Strasnicks failed to

The evidence concerning the Strasnicks' practices in dispensing dextroamphetamine includes numerous instances in which more than one thirty-day supply of the drug was dispensed to an individual in a thirty-day period. The DEA's sample of the prescriptions seized shows that most of those patients received dextroamphetamines for periods of time ranging from fifteen to twenty-four months. The Strasnicks do not deny that they knew these prescriptions were intended for weight control.

These facts and circumstances surrounding the dextroamphetamine prescriptions are adequate evidence to permit the board to conclude that the Strasnicks dispensed the drug without a legitimate medical purpose. "Determinations as to the effect of conduct is essentially a matter of drawing inferences, and an agency's conclusions based on inferences will not be set aside by a reviewing court unless they are unreasonable." *Arthurs, supra* at 310. In the present case, the board's conclusion was not unreasonable.

4. *Reference to the United States Pharmacopeia in 247 Code Mass. Regs. § 7.00 (20).* The Strasnicks claim that the board violated their rights when it found that they violated 247 Code Mass. Regs. § 7.00 (20) (b) by failing to dispense dextroamphetamines in accordance with the dispensing information set forth in the USP. They neglect to develop arguments to substantiate their claim, and cite no authorities to support it; it is thus unclear exactly what rights they allege have been violated. Nonetheless we have reviewed their contention that the board should not have used the USP as a reference point, and conclude that it is without merit.

Part (a) of the regulation at issue requires that pharmacists be "aware of the Dispensing Information set forth in the most recent edition of the United States Pharmacopeia and its current supplements, and any other accepted authoritative source." 247 Code Mass. Regs. § 7.00 (20) (a). Part (b) re-

object to that evidence. Thus, the contents of the guidelines were before the board and could be considered by them. To the extent the Strasnicks now argue it was improperly admitted below, that objection is too late. See *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 125 (1985).

quires that a pharmacist dispense in accordance with the dispensing information in the USP or any authoritative source, except that he or she shall vary or omit the recommended practices whenever "in said pharmacist's professional judgment, said variation or omission serves the best interests of the patient in the particular circumstances involved." § 7.00 (20) (b). Part (c) makes it clear that a pharmacist is not limited in using his professional judgment in patient counseling to only those instances where the dispensing information mentions unusual circumstances. § 7.00 (20) (c).

The Strasnicks allege that the board exceeded its statutory authority in part (b) by delegating its rulemaking power to the USP. This contention is belied by the plain language of the regulation, which simply recognizes the USP as one authoritative source among others of information about proper practices. The Strasnicks further object to the board's use of the USP as a standard of practice in this case because the dispensing information limits recommended use of dextroamphetamines to "a short time." United States Pharmacopeia Dispensing Information — Advice for the Patient, Vol. II, at 56 (5th ed. 1985). The Strasnicks claim this term is unconstitutionally vague. "A law is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983), quoting *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926). *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 356 (1988). *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 127 (1985). In a case such as this, where neither First Amendment freedoms nor criminal conduct are at issue, we look to the circumstances of the particular case to see if the regulation was unconstitutionally vague as applied. *Cherubino*, *supra* at 356-357. *Gurry*, *supra* at 127.

The Strasnicks had fair notice that their dispensing practices violated the regulation. The evidence showed that they dispensed dextroamphetamines for weight control to many patients for over a year. They knew that dextroamphet-

amines are potentially addictive and therefore are classified as controlled substances. It is not necessary under these circumstances for them to guess as to whether periods of over a year qualified as "a short time."

Finally,[9] the Strasnicks object to the board's citation in both the order to show cause and the decision and order to an edition of the USP dated 1985, when the prescriptions were dispensed in 1983 and 1984. No explanation appears either in the record or in the board's brief as to why the board failed to cite to an earlier edition in preparing the order to show cause, or why it failed to introduce an earlier edition in evidence.[10] In these circumstances, it is reasonable to infer that the 1985 edition contained substantially the same dispensing information as the 1981 edition. Thus, we conclude there was no error in using the 1985 edition because it contained substantially the same dispensing information as the 1981 edition. On this record, the Strasnicks have not shown any error.

5. *Stephen Strasnick's obligation to register as manager under 247 Code Mass. Regs. § 4.04 (6).* The Strasnicks claim that the board made an error of law in determining that Stephen Strasnick had an obligation to notify the board of a change in management, and that he violated § 4.04 (6) by failing to fulfil that obligation.[11] They base their claim on

---

[9]The Strasnicks also claim that their rights were violated because the USP dispensing information is advisory rather than legally binding regulations. This claim is essentially the same as that discussed in section 3 of this opinion, and we reach the same conclusion: the board's decision was not error.

[10]The record does contain, however, some evidence as to the contents of earlier editions. Crowley testified that he referred to a 1981 edition during his investigation, and that he concluded from that edition that the Strasnicks' dispensing practices were contrary to the USP recommendations. The Strasnicks did not offer evidence that earlier editions were significantly different from the 1985 edition.

[11]Title 247 Code Mass. Regs. § 4.04 (6) reads as follows: "Whenever there is a change in the management of a community pharmacy or pharmacy department such that said pharmacy is to be managed by a registered pharmacist other than the pharmacist who completed the initial application for registration, the registration and the certificate of fitness, if

a theory that only a formal agreement to change management triggers an obligation to notify the board, and that the board cannot find a violation of the regulation without evidence of such a formal agreement.

The regulation is part of a system designed to allow the board to monitor carefully the dispensing of prescription drugs. The application for initial registration of a community pharmacy must be completed by the registered pharmacist who will manage and operate the pharmacy. 247 Code Mass. Regs. § 4.04 (2). The board may not issue a registration for conducting a retail drug business to a corporation unless the management of the pharmacy department is in the hands of a registered pharmacist. G. L. c. 112, § 39 (1988 ed.). Whenever there is a change in the management of a community pharmacy or a pharmacy department the pharmacist who will manage and operate the pharmacy in the future must complete a new application together with an inventory of controlled substances. 247 Code Mass. Regs. § 4.04 (6). The name of the manager of a pharmacy or pharmacy department must be conspicuously displayed. 247 Code Mass. Regs. § 4.05 (7). The manager is responsible for reporting to the board within five days of the commencement or termination of employment of another registered pharmacist. 247 Code Mass. Regs. § 4.05 (11). The manager and the pharmacist on duty are jointly responsible for the security of the pharmacy. 247 Code Mass. Regs. § 4.05 (14). Taken together, these provisions manifest a consistent regulatory focus on the person who oversees the day-to-day operation of the pharmacy and the flow of prescription drugs to the public. The manager is assigned significant personal responsibility for monitoring pharmacy operations. For this reason, the

---

any, shall be promptly returned to the Board. A new application for registration shall be promptly submitted by the registered pharmacist who is to manage and operate said pharmacy; and, with said application, a complete inventory of controlled substances in schedules II, III, IV, and V shall be submitted. A check or money order in the amount of the statutory fee, as well as all other information required by the Board, shall accompany said new application for registration."

manager must be approved by the board and at all times be clearly identified to both the public and the board. Close oversight of the person responsible for the daily management and security of prescription drugs enables the board to further its mission of promoting the public health and welfare by regulating the flow of prescription drugs. We therefore agree with the board that § 4.04 (6) requires notification of the board any time there is a change in daily management.

Both Strasnicks gave unambiguous testimony at the hearing showing that Stephen Strasnick managed the daily work of the pharmacy. The board did not make an error of law in concluding that Stephen Strasnick had an obligation to notify the board of a change in management.

The action is remanded to the single justice with directions to enter judgment affirming the decision of the board.

*So ordered.*