NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13864

MD ZAFAR  vs.  STATE LOTTERY COMMISSION.


Plymouth.      March 2, 2026. - May 13, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.


State Lottery Commission.  Lottery.  License.  Administrative Law, Regulations, Agency's interpretation of statute, Substantial evidence, Judicial review.  Regulation. Statute, Construction.  Constitutional Law, Regulation. Due Process of Law, Vagueness of regulation.  Practice, Civil, Burden of proof, Judgment on the pleadings. Evidence, Acquittal in prior criminal trial.  Rape.



Civil action commenced in the Superior Court Department on March 7, 2024.

The case was heard by Mark A. Hallal, J., on motions for judgment on the pleadings.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Konstantin Tretyakov, Assistant Attorney General, for the defendant.
Jason C. Howard for the plaintiff.

KAFKER, J.  As provided by statute, the director of the State Lottery Commission (commission) "shall license as agents to sell lottery tickets such persons as in his opinion will best serve the public convenience," and "may refuse to issue a license to any person who has been convicted of a felony . . . and who, in the opinion of [the] director, is not of good moral character to act as a licensed agent to sell lottery tickets." G. L. c. 10, §§ 26, 27.  Here, the plaintiff, MD Zafar, sought to renew his sales agent license for one of his convenience stores.  The commission learned during the application process that Zafar had been charged with and acquitted of raping his wife.  Relying on the transcripts from Zafar's criminal trial, and discrediting Zafar's testimony before him, a hearing officer found by a preponderance of the evidence that Zafar had raped Esha.[1]  The hearing officer then applied the commission's regulations, 961 Code Mass. Regs. § 2.13(3) and (7) (1998),[2] and concluded:  "Rape is an abhorrent crime that demonstrates a deficient moral character.  Awarding a sales agent license to an individual of deficient moral character does not serve the Lottery, the public, or the Commonwealth."

---

[1] A pseudonym.

[2] A new version of 961 Code Mass. Regs. §§ 2.00 took effect on February 13, 2026, but § 2.13 does not substantively differ and subsections (3) and (7) are unchanged.

Zafar sought judicial review of the commission's decision, arguing that (1) § 2.13(7) of the commission's regulations, which provides for the denial of a license based on deficient moral character alone, exceeds the commission's statutory authority, (2) the commission's decision was not supported by substantial evidence, and (3) § 2.13(7) is unconstitutionally vague. A Superior Court judge allowed Zafar's motion for judgment on the pleadings, concluding that the statute, G. L. c. 10, § 27, requires both a felony conviction and a moral character determination before the commission can deny an applicant a sales license. Because § 2.13(7) of the commission's regulations allows the commission to deny a sales license upon a finding of deficient moral character alone, without a felony conviction, the judge held that the regulation exceeds the commission's statutory authority. The judge also held that the commission's finding that Zafar had raped Esha was not supported by substantial evidence because the hearing officer relied only on the trial transcripts and not live testimony. The judge did not reach Zafar's constitutional argument.

We conclude that the statute and regulations provide the commission the discretion to deny a license to sell lottery tickets based on deficient moral character, even if the applicant has been acquitted of the crime upon which the finding

of deficient moral character is based. The statute provides the commission significant discretionary authority to issue licenses that, in the director's opinion, best serve the public convenience. In this context, the regulations reasonably interpret the statute to allow the director to consider deficient moral character and a felony conviction as separable bases for such denials, as the § 2.13(7) regulation expressly recognizes. Furthermore, unlike in a criminal trial where the burden of proof on the Commonwealth is proof beyond a reasonable doubt, the burden of proof of deficient moral character in a licensing proceeding is by a preponderance of the evidence. Where the hearing officer found by a preponderance of the evidence that Zafar had raped Esha, the commission was justified in determining that Zafar had deficient moral character pursuant to § 2.13(7). Moreover, the transcripts from Zafar's criminal trial satisfy the substantial evidence test, and § 2.13(7) is not unconstitutionally vague as applied in these circumstances. Accordingly, we reverse the Superior Court order allowing Zafar's motion for judgment on the pleadings and denying the commission's cross motion for judgment on the pleadings, and judgment shall enter for the commission.

1. Background. We summarize the facts as found by the hearing officer and adopted by the commission, which we conclude are supported by substantial evidence, as discussed infra. See

<u>Craft Beer Guild, LLC</u> v. <u>Alcoholic Beverages Control Comm'n</u>, 481 Mass. 506, 509 (2019), citing G. L. c. 30A, § 14 (7) (<u>e</u>).

In February 2015, Zafar raped his then wife, Esha.  About one week later, Esha told her doula, who was also a close friend, about the rape.  A few days later, Esha went to see her physician regarding injuries suffered during the rape, but the physician did not mention the rape in her report, as Esha preferred.  About one month after the rape, Esha reported it to the police and obtained an abuse prevention order.  On September 2, 2015, Zafar was arraigned on indictments alleging two counts of rape and one count each of assault by means of a dangerous weapon, assault on a family or household member, assault and battery, threatening to commit assault, and witness intimidation.

At the time, Zafar owned several convenience stores for which he maintained licenses authorizing lottery sales.  During a routine criminal records check in connection with a renewal application for one such license, the commission learned of Zafar's then-pending criminal charges.

On December 31, 2016, the commission notified Zafar that it intended to deny his license renewal application.  On January 12, 2017, the commission held a hearing.  On February 7, 2017, the commission formally denied Zafar's renewal application without prejudice to refiling.

On September 1, 2017, after a jury trial, a jury acquitted Zafar of all charges.

In January 2020, Zafar submitted applications for lottery licenses for two of his stores. On November 8, 2021, the commission notified Zafar that it intended to deny his applications. Zafar requested a director-level hearing, which took place on May 24, 2022. On August 12, 2022, the director designee affirmed the commission's decision to deny Zafar's applications, and on September 2, 2022, the commission issued a posthearing denial letter. On September 12, 2022, Zafar timely requested a commission-level hearing.

The commission-level hearing took place on March 27, 2023. The evidence included the transcripts and complete Superior Court file from Zafar's criminal case, in addition to live testimony from Zafar and the commission's director of compliance and security.

On January 19, 2024, the commission hearing officer recommended that the commission deny Zafar's applications based on the factual finding that a preponderance of the evidence showed Zafar raped Esha, and "[r]ape is an abhorrent crime that demonstrates a deficient moral character" pursuant to 961 Code Mass. Regs. § 2.13(7).[3] The hearing officer also rejected

---

[3] The hearing officer also determined that denying Zafar's applications was "in the best interests of the Lottery, the

Zafar's argument that the commission's regulations are void for vagueness, because Zafar was on notice that a person who rapes another is morally deficient under any societal standard.  On February 27, 2024, the commission adopted the hearing officer's recommendations and affirmed the denial of Zafar's license applications.

On March 7, 2024, Zafar timely sought judicial review in the Superior Court under G. L. c. 30A.  The parties cross-moved for judgment on the pleadings.  On March 20, 2025, a judge allowed Zafar's motion and reversed the commission's denial of his license applications.  The judge concluded that the agency's determination was an error of law because G. L. c. 10, § 27, "includes a two-part inquiry":  the applicant must both be convicted of a felony and lack good moral character before the commission can deny a sales license under that provision.  Thus, the judge concluded that because a felony conviction is a "requisite element of G. L. c. 10, § 27," the commission's decision exceeded the statutory limits of its licensure authority.  The judge further concluded that the commission's decision lacked substantial evidence because the hearing officer relied upon the trial transcripts only, without live testimony

---

public welfare, [and] the Commonwealth" pursuant to G. L. c. 10, § 26, and 961 Code Mass. Regs. § 2.13(3).

from Esha or the people to whom she reported the assault. The judge did not reach Zafar's constitutional vagueness arguments.

The commission appealed from the judge's ruling. We transferred the case to this court on our own motion.

2. Discussion. a. Standard of review. A final agency decision may be set aside or modified on judicial review under G. L. c. 30A, § 14, where, among other reasons, it is "[b]ased upon an error of law," under § 14 (7) (c); "[u]nsupported by substantial evidence," under § 14 (7) (e); or "[i]n violation of constitutional provisions," under § 14 (7) (a). Zafar challenged the commission's denial of his license applications in the Superior Court on each of these bases. We address his arguments in turn.

b. Whether the license denials were based upon an error of law. "Duly promulgated regulations of an administrative agency are presumptively valid and must be accorded all the deference due to a statute" (quotation and citation omitted). Craft Beer Guild, LLC, 481 Mass. at 520. "[R]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate" (citation omitted). Duarte v. Commissioner of Revenue, 451 Mass. 399, 408 (2008). We "give due weight to the commission's experience, technical competence and specialized knowledge, as well as to the discretionary authority conferred

upon it" (quotation and citation omitted). Craft Beer Guild, LLC, supra at 512. See G. L. c. 30A, § 14 (7). "This deference is not, however, 'abdication'; we will not hesitate to overrule agency interpretations of statutes or rules when those interpretations are arbitrary or unreasonable" (quotation and citation omitted). Freiner v. Secretary of the Executive Office of Health & Human Servs., 494 Mass. 198, 205 (2024).

i. Statutory framework. The Massachusetts State lottery is governed by the State lottery law, G. L. c. 10, §§ 22 to 35, 37 to 40, and 56 to 58. General Laws c. 10, § 24, provides: "The commission is hereby authorized to conduct a state lottery and shall determine," inter alia, the "types of locations at which tickets or shares may be sold," and "the method to be used in selling tickets or shares." See Bretton v. State Lottery Comm'n, 41 Mass. App. Ct. 736, 740 (1996); Ruggiero v. State Lottery Comm'n, 21 Mass. App. Ct. 686, 690 n.2 (1986). Section 24 also empowers the commission to establish and revise "such rules and regulations as it deems necessary or desirable." G. L. c. 10, § 24 (b).

General Laws c. 10, §§ 26 and 27, govern the licensing of sales agents to sell lottery tickets. Pursuant to G. L. c. 10, § 26, the director of the commission "shall supervise and administer the operation of the lottery in accordance with the provisions of the state lottery law, and rules and regulations

made thereunder."  This authority includes broad discretion: the director "shall license as agents to sell lottery tickets such persons as in his opinion will best serve the public convenience."  G. L. c. 10, § 26.  The director is also empowered to "suspend or revoke any license for violation of the state lottery law or of the rules and regulations made thereunder."  Id.

General Laws c. 10, § 27, further describes the director's discretion in issuing or refusing to issue a license:

> "Before issuing such license the director shall consider the financial responsibility and security of each applicant for licenses, his business or activity, the accessibility of his place of business or activity to the public, the sufficiency of existing licenses to serve the public convenience, and the volume of expected sales.  Said director may refuse to issue a license to any person who has been convicted of a felony by a court of competent jurisdiction in the commonwealth or of any other state or of the United States and who, in the opinion of said director, is not of good moral character to act as a licensed agent to sell lottery tickets."  (Emphases added.)

The commission has set forth additional regulatory guidance concerning the lottery in Title 961 of the Code of Massachusetts Regulations.  As relevant here, 961 Code Mass. Regs. § 2.13 provides:

> "A Sales Agent's license may be revoked, suspended or an application may be denied or its renewal rejected by the Director . . . for one or more or all of the outlets listed thereon for any one or more of the following reasons.
>
> ". . .
>
> "(7) If the moral character of the Applicant or Sales Agent . . . is found by the Director to be deficient.  Conviction

at any time of a felony or of any violation of [G. L. c. 271] or any other anti-gambling law or law relating to the taxation of gambling or the proceeds thereof shall create a presumption of deficient moral character."

On appeal, the commission contends the judge erred in concluding that § 2.13(7) exceeds the commission's statutory authority because G. L. c. 10, § 27, provides the commission the discretionary authority to deny a license to an applicant based on deficient moral character alone.  Reading the statute as a harmonious whole, as we must, we agree.

ii.  General Laws c. 10, § 27, and 961 Code Mass. Regs. § 2.13(7).  In construing G. L. c. 10, § 27, "we interpret the statutory language according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (quotation and citation omitted).  Boston Police Patrolmen's Ass'n v. Boston, 435 Mass. 718, 719-720 (2002).  Furthermore, "[i]n interpreting a statute, we look not only to the specific words at issue but also to other sections, and 'construe them together . . . so as to constitute an harmonious whole consistent with the legislative purpose.'"  Malloy v. Department of Correction, 487 Mass. 482, 496 (2021), quoting Pentucket Manor Chronic Hosp.,

Inc., v. Rate Setting Comm'n, 394 Mass. 233, 240 (1985).
Finally, as discussed supra, regulations that constitute
reasonable constructions of statutes are entitled to deference.

The statute here provides the commission broad
discretionary authority to issue licenses that, in the
director's opinion, best serve the public convenience.  See
G. L. c. 10, § 26.  In furtherance of that discretionary
authority, G. L. c. 10, § 27, states that the director "may
refuse to issue a license to any person who has been convicted
of a felony . . . and who, in the opinion of said director, is
not of good moral character."  G. L. c. 10, § 27.  "This court
consistently has interpreted statutory language using the word
'may' as 'generally permissive, reflecting the Legislature's
intent to grant discretion or permission . . . .'"  Perez v.
Department of State Police, 491 Mass. 474, 483 (2023), quoting
Commonwealth v. Dalton, 467 Mass. 555, 558 (2014).  Here, § 27
is clearly a permissive and not a mandatory provision, thereby
enhancing and not restricting the agency's authority.

In this statutory context -- which empowers the director
with significant discretionary authority regarding who is
entitled to a license to sell lottery tickets -- where the
statute provides that the director may deny a license to an
applicant who has been convicted of a felony and who, in the
director's opinion, is not of good moral character, we conclude

the word "and" may reasonably be interpreted by the agency empowered to enforce the statute as providing independent discretionary authority.  Therefore, § 27 may be interpreted by the commission in its regulations to authorize the director to deny a license to an applicant who has been convicted of a felony and to deny a license to an applicant who, in the director's opinion, is not of good moral character; it does not require both a felony conviction and a finding that the applicant is not of good moral character.  Although § 27 is not written as clearly as it could be, we conclude the agency charged with its enforcement has reasonably interpreted it.  The commission's regulations reasonably recognize the importance of a deficient moral character without requiring a felony conviction.  See 961 Code Mass. Regs. § 2.13(3), (7).

Section 2.13(7) is thus consistent with G. L. c. 10, § 27. Section 2.13(7) provides that a license application may be denied "[i]f the moral character of the Applicant or Sales Agent . . . is found by the Director to be deficient.  Conviction at any time of a felony . . . shall create a presumption of deficient moral character."  961 Code Mass. Regs. § 2.13(7). Because G. L. c. 10, § 27, may reasonably be interpreted not to require a felony conviction, § 2.13(7) does not exceed the commission's statutory authority; the director may deny a

license application based on an applicant's deficient moral character alone.

c. <u>Whether the commission's decision was supported by substantial evidence</u>. We next consider whether the commission's denial of Zafar's sales license applications was supported by "substantial evidence." G. L. c. 30A, § 14 (7) (<u>e</u>).

The judge below concluded that the commission's decision was unsupported by substantial evidence because the underlying factual findings were predicated on transcripts from Zafar's criminal trial. On appeal, the commission argues that this was error and the hearing officer's reliance on the transcripts was proper. We agree with the commission.

In the instant case, the hearing officer found by a preponderance of the evidence that Zafar had raped his wife. On appeal, we review that factual determination and the hearing officer's conclusion that the rape demonstrated deficient moral character according to the substantial evidence test.[4] "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6). Therefore, "[a] finding of the [commission]

_____

[4] See, e.g., <u>Narducci</u> v. <u>Contributory Retirement Appeal Bd.</u>, 68 Mass. App. Ct. 127, 136 (2007) (describing preponderance of evidence standard applicable to fact finding at administrative level and substantial evidence standard applicable on appeal); <u>Lisbon</u> v. <u>Contributory Retirement Appeal Bd.</u>, 41 Mass. App. Ct. 246, 255, 257 (1996) (same).

must be set aside if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.'" New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 465-466 (1981), quoting Boston Edison Co. v. Selectmen of Concord, 355 Mass. 79, 92 (1968). See Welter v. Board of Registration in Med., 490 Mass. 718, 728-729 (2022), cert. denied, 143 S. Ct. 2561 (2023). Although "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight" (citation omitted), Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966), "as long as there is substantial evidence to support the findings of the agency, we will not substitute our view of the facts," Pacewicz v. Board of Registration of Massage Therapy, 497 Mass. 1004, 1007 (2026), quoting Duggan v. Board of Registration in Nursing, 456 Mass. 666, 673-674 (2010).

Here, the hearing officer primarily relied on transcripts of Esha's testimony at Zafar's criminal trial to conclude by a preponderance of the evidence that Zafar raped Esha. Adopting these findings, the commission denied Zafar's licenses due to his deficient moral character. See 961 Code Mass. Regs. § 2.13(7). Because the commission is not "bound by the rules of admissibility of evidence observed by courts," Embers of Salisbury, Inc. v. Alcoholic Beverages Control Comm'n, 401 Mass.

526, 529 (1988), "[s]ubstantial evidence may be based on hearsay alone if that hearsay has indicia of reliability" (quotation and citation omitted), Covell v. Department of Social Servs., 439 Mass. 766, 786 (2003). Esha's trial testimony bears such indicia of reliability. Her account of the alleged rape was detailed, based on firsthand observations, given under oath, subject to cross-examination, and largely consistent with both her report to the police and the testimony at trial of her doula and doctor. See Covell, supra. See also Embers of Salisbury, Inc., supra at 530-531. The hearing officer assessed these and other relevant reliability factors, and he assigned Esha's testimony probative weight. This he was entitled to do. Id. at 530 ("the credibility of and the weight to be given [trial transcript testimony is] a matter squarely within the ambit of the [agency's] fact-finding responsibility").

Pointing to Salem v. Massachusetts Comm'n Against Discrimination, 404 Mass. 170 (1989), Zafar contends that because the commission's denial of his applications turned on a credibility determination -- namely, the hearing officer's decision to credit Esha's rape allegation and not credit Zafar's denials -- the trial transcripts alone cannot satisfy the substantial evidence test. But Salem is inapposite. In that case, we held that where live witnesses gave differing accounts of a material event at an agency hearing, a decision relying on

an assessment of such witnesses' credibility could not be made by someone who was not present at the hearing. See Salem, supra at 174-175. See also Covell, 439 Mass. at 787 n.19. Here, by contrast, Esha did not testify during the agency proceedings, and the hearing officer who heard Zafar's live testimony also issued the recommendation that his applications be denied. Indeed, we have already considered and rejected the more expansive reading of Salem on which Zafar now relies. See id. (Salem "do[es] not suggest that credibility disputes can only be resolved by live testimony. Rather, [it] stand[s] for the proposition that when parties do present live testimony, they are entitled to have the credibility determination made by someone who heard the testimony that was presented"). "[T]he fact that parties before an agency have differing versions of critical events does not make live testimony the sine qua non for satisfying the substantial evidence test." Id. at 787.

Nor does the jury's decision to acquit Zafar compel a different result. As we have previously emphasized, "[t]hat . . . trial testimony had not, in the jury's opinion, met the standard of proof 'beyond a reasonable doubt' -- the highest standard of proof imposed by our jurisprudence -- does not mean

that it was unreliable for purposes of the substantial evidence test." Covell, 439 Mass. at 786.[5,6]

d. Vagueness. Finally, we address Zafar's argument that 961 Code Mass. Regs. § 2.13(7) is unconstitutionally vague. "A law is void for vagueness if persons of common intelligence must necessarily guess at its meaning and differ as to its application, or if it subjects people to an unascertainable standard" (citations and quotations omitted). Chief of Police of Worcester v. Holden, 470 Mass. 845, 854 (2015). "The degree of vagueness that is permissible under principles of due process varies with the interests involved." Id. As applicable here, a regulation that "merely regulates business interests need not specify with great particularity the relevant considerations with respect to whether to revoke [or deny] a license. . . . It

---

[5] Zafar also argues that, even assuming consideration of the trial transcripts was proper, the hearing officer impermissibly ignored evidence that contradicted his conclusions. We disagree. In his written decision, the hearing officer expressly acknowledged Zafar's testimony denying the alleged rape and that of his alibi witness, identified certain inconsistencies in Esha's testimony, and considered whether Esha was motivated to make false allegations against Zafar. That the hearing officer ultimately declined to give such evidence decisive weight does not mean he failed to "take[] into account the entire record" as required by the substantial evidence test. Covell, 439 Mass. at 783. See G. L. c. 30A, § 14 (7).

[6] We likewise reject Zafar's suggestion that the hearing officer's decision was unduly speculative. There was substantial evidence to support his conclusion that it was more likely than not that Zafar raped Esha.

is enough that the [agency] exercise its discretion fairly and not act in an arbitrary and capricious manner."  Gurry v. Board of Pub. Accountancy, 394 Mass. 118, 128 (1985), quoting LaPointe v. License Bd. of Worcester, 389 Mass. 454, 462 (1983). Moreover, in the business context, "we limit our vagueness analysis to whether [the regulation] is unconstitutionally vague as applied in this case."  Caswell v. Licensing Comm'n for Brockton, 387 Mass. 864, 873 (1983) ("Since neither First Amendment [to the United States Constitution] freedoms nor criminal conduct are concerned in this case, a less stringent vagueness standard applies").

Section 2.13(7) is not unconstitutionally vague as applied to the present case.  As explained supra, the hearing officer's conclusion that Zafar raped Esha was supported by substantial evidence.  Accordingly, the relevant question is whether a person of common intelligence would understand that if he committed that offense, he could be found to be of deficient moral character and denied a license to sell lottery tickets. See 961 Code Mass. Regs. § 2.13(7).  The answer to that question is clearly yes.[7]

---

[7] Zafar also contends that 961 Code Mass. Regs. § 2.13(3), which provided an alternative basis for the commission's denial, exceeds the commission's statutory authority and is unconstitutionally vague.  Zafar's argument in this regard is barely developed and does not rise to the level required for

3.  Conclusion.  For the reasons discussed supra, we conclude that the commission's decision was not based on an error of law and was supported by substantial evidence.  The regulation at issue was also not unconstitutionally vague.  The order allowing Zafar's motion for judgment on the pleadings and denying the commission's cross motion for judgment on the pleadings is therefore reversed, and judgment shall enter for the commission.

Judgment reversed.

appellate argument.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).  We therefore decline to address it.