RONALD A. CHERUBINO vs. BOARD OF REGISTRATION OF
CHIROPRACTORS.

Suffolk.  September 12, 1988. — November 9, 1988.

Present: HENNESSEY, C.J., LIACOS, NOLAN, & LYNCH, JJ.

*Chiropractor. Board of Registration of Chiropractors. Administrative Law,*
Substantial evidence, Judicial review, Evidence, Regulations, Agency's
interpretation of regulation. *Due Process of Law,* Vagueness of regula-
tion. *Regulation. Evidence,* Business record, Judicial discretion.

In a proceeding before the Board of Registration of Chiropractors regarding
a chiropractor's treatment of a patient's so-called cervical whiplash injury
sustained in a motorcycle accident, there was substantial evidence to
support the board's conclusions that the chiropractor, in his practice of
chiropractic medicine, had overutilized therapies in violation of 233
Code Mass. Regs. § 4.06; that his charges were excessive in violation
of 233 Code Mass. Regs. § 4.07 (1) & (5); and that he had violated
G. L. c. 112, § 61, in that he was guilty of "deceit and gross misconduct
in the practice of his profession." [354-356]
Provisions of 233 Code Mass. Regs. § 4.06, defining "[o]verutilization of
practice" by a chiropractor as "practice excessive in quality or amount
to the needs of the patient," were not unconstitutionally vague as applied
by the Board of Registration of Chiropractors to impose a two-year
period of probation on a chiropractor who, in treating a patient with an
injury that normally required from four to six weeks of treatment absent
proven exceptional circumstances, prescribed a program of treatment
requiring forty-four separate treatments over a six-month period.
[356-358]
The Board of Registration of Chiropractors had authority under G. L. c. 112,
§ 61, to impose sanctions on a chiropractor who had overutilized therapies
on a patient in his practice of chiropractic medicine, in violation of 233
Code Mass. Regs. § 4.06, and had excessively charged the patient in
violation of 233 Code Mass. Regs. § 4.07 (1) & (5), where the board's
imposition of sanctions for excessive treatment and charges bore a ra-
tional relation to the Legislature's goal of safeguarding the public welfare
through regulation of the chiropractic profession. [358]
In a proceeding before the Board of Registration of Chiropractors regarding
a chiropractor's treatment of a patient's injuries sustained in a motorcycle
accident, the board's amended finding that the chiropractor had violated

G. L. c. 112, § 61, when it originally failed to make this finding, did not constitute an arbitrary or capricious action, where there was substantial evidence in the record to support the board's decision. [358-359]

In a proceeding before the Board of Registration of Chiropractors regarding a chiropractor's treatment of a patient's injury, there was no error in the board's excluding from evidence a verbatim transcription of the chiropractor's handwritten patient progress notes and a chart summarizing the patient's visits to his office, both of which it had admitted as chalks. [359]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 6, 1986.

The case was heard by *Wilkins, J.*

*John F. Batter, III,* for the plaintiff.

*Despena Fillios Billings,* Assistant Attorney General, for the defendant.

LIACOS, J.  Ronald A. Cherubino, a licensed chiropractor, appeals to this court from a decision of the single justice affirming the decision of the Board of Registration of Chiropractors (board) that he had overutilized therapies in his practice of chiropractic medicine and had made improper charges, in violation of 233 Code Mass. Regs. §§ 4.06,[1] 4.07(1) and (5),[2] and in violation of G. L. c. 112, § 61 (1986 ed.).[3] The board

---

[1] Title 233 Code Mass. Regs. § 4.06 (1986) provides: "Overutilization of practice shall constitute a form of misrepresentation, deceit, unprofessional conduct, or gross misconduct. Overutilization of practice is practice excessive in quality or amount to the needs of the patient. It may be determined from such sources as patient's history, subjective symptoms, objective findings and reasonable clinical judgment as well as other relevant information."

[2] Title 233 Code Mass. Regs. § 4.07 (1986) provides in pertinent part: "Improper charges shall constitute a form of misrepresentation, deceit, unprofessional conduct, and gross misconduct. Without limiting the definition of improper charges, the following charges shall be considered improper charges: (1) charges for overutilization of practice as defined in 233 CMR 4.06. . . . (5) a fee is excessive when after a review of the facts, a person of ordinary prudence would be left with a definite and firm conviction that the fee is so high as to be manifestly unconscionable and overreaching under the circumstances."

[3] The relevant provisions of G. L. c. 112, § 61, are that a board of registration may "suspend, revoke or cancel any certificate, registration,

suspended Cherubino's license for three months, stayed the suspension, and imposed a two-year period of probation.

Cherubino claims that (1) the board's decision is unsupported by substantial evidence; (2) 233 Code Mass. Regs. § 4.06, proscribing "overutilization of practice," is unconstitutionally vague; (3) the board did not have authority to impose sanctions for violations of 233 Code Mass. Regs. § 4.06; (4) the board's decision was arbitrary and capricious; and (5) the board erred in refusing to admit in evidence a typewritten version of the chiropractor's handwritten patient progress notes and a chart summarizing the patient's treatment schedule. We conclude that there was no error, and we affirm the decision of the board.[4]

On April 12, 1985, the board issued an order to show cause, questioning whether Cherubino overutilized his practice in his treatment of one Michael Ellis and whether the fees charged for Ellis's treatment were excessive. After a hearing on October 2, 1985, the board concluded that Cherubino was guilty of excessive utilization of therapies and improper charges in violation of 233 Code Mass. Regs. §§ 4.06, 4.07(1) and (5). The board also concluded at that time that there was no evidence of a violation of G. L. c. 112, § 61.

The plaintiff appealed to a single justice of this court who, on August 7, 1986, remanded the matter to the board for further findings. On January 28, 1987, the board conducted a second hearing at which it allowed the plaintiff to recreate that portion of his testimony given at the first hearing which was not transcribed properly, received certain exhibits in evidence, including the plaintiff's written progress notes, and excluded a typewritten transcription of the progress report and a chart summarizing

license or authority issued by it, if it appears to the board that the holder [thereof] . . . is guilty of deceit, malpractice, gross misconduct in the practice of his profession, or of any offence against the laws of the commonwealth relating thereto."

Additionally, § 61 gives the board power to promulgate rules and regulations "as they deem proper for the filing of charges and the conduct of hearings."

[4] Although this matter comes to us in the form of an "appeal" from the decisions of the single justice, we review the decision of the board directly. G. L. c. 112, § 64 (1986 ed.). *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 119 n.1 (1985). See G. L. c. 30A, § 14 (7) (1986 ed.).

the patient's treatment schedule. The board entered an amended decision and order on April 13, 1987, ruling that Cherubino's treatment was excessive in violation of 233 Code Mass. Regs. § 4.06, that his charges were excessive in violation of 233 Code Mass. Regs. § 4.07(1) and (5), and that Cherubino had violated G. L. c. 112, § 61, in that he was guilty of "deceit and gross misconduct in the practice of his profession." The board reimposed its prior order by suspending Cherubino for three months, but stayed the suspension and imposed probation for a period of two years. The single justice affirmed the amended decision on September 15, 1987, holding that there was substantial evidence to support the finding of the board.[5]

We summarize the board's findings. Cherubino had been a licensed chiropractor in the Commonwealth for one and one-half years when Michael Ellis, a twenty-one year old man, first visited him for treatment on April 4, 1984. Ellis had been taken to Leonard Morse Hospital the previous day following a motorcycle accident, where he was examined, X-rayed, and discharged that same day with a diagnosis of cervical strain. Ellis complained to the plaintiff of pain in his neck and limited movement, and the plaintiff made a diagnosis of a so-called whiplash injury. He prescribed a program of treatment which included electrical stimulation to relieve muscle spasm, inter-segmental traction, and heat, all of which are considered by the chiropractic profession to be "supportive procedures."[6] Acute muscle spasms on such cervical whiplash injuries rarely last more than four to six weeks.

---

[5] The single justice previously had concluded that 233 Code Mass. Regs. § 4.06 was not unconstitutionally vague.

[6] Title 233 Code Mass. Regs. § 4.03 (1986) defines supportive procedures as follows:

> "Those procedures that do not conflict with Massachusetts law and which aid the chiropractor in 'removing interference with the transmission or expression of nerve force in the human body, by the correction of misalignments or subluxations of the bony articulation and adjacent structures, more especially those of the vertebra column and pelvis, for the purpose of restoring and maintaining health.'
>
> "Supportive procedures shall be supplemental or ancillary to the chiropractic adjustment and must not be used as an independent therapy. The use of supportive procedures MUST AT ALL TIMES

Cherubino administered forty-four treatments to Ellis between April 4 and October 15, 1984, thirty-six of which were exactly the same despite the fact that on May 7, 1984, he entered into the patient's progress report that the conditions were improving and that pain and spasm had been reduced. Cherubino charged $3,690 for the treatments. The board concluded that Ellis had suffered a mild-to-moderate whiplash injury which was not sufficiently serious to warrant continuous supportive treatment for six months.

1. *Substantial evidence.* The plaintiff contends that the board's decision is unsupported by substantial evidence. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1986 ed.). *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981). Our review under the substantial evidence standard is circumscribed. *Langlitz* v. *Board of Registration of Chiropractors,* 396 Mass. 374, 379 (1985). "While we must consider the entire record, and must take into account whatever in the record detracts from the weight of the [board's] opinion, *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966), as long as there is substantial evidence to support the findings of the [board], we will not substitute our views as to the facts." *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 304 (1981). See *Bill* v. *Board of Registration of Chiropractors,* 394 Mass. 779, 781 (1985). We conclude that the board's decision was supported by substantial evidence.

The board took testimony from two expert witnesses. Allan R. Steingisser[7] found that the supportive procedures were not

be supported by a clinical rationale equivalent to present educational standards as well as usual and customary practices.

"The option to use supportive procedures shall be left to the judgment of the individual chiropractor and shall not be considered a requirement in the practice of chiropractic.

"No ongoing supportive technique shall be utilized unless a licensed chiropractor is on the premises."

[7] Steingisser, a licensed chiropractor, reviews chiropractic claims for insurance carriers throughout the country. He has served as president of the Massachusetts Chiropractic Society and the North Shore Chiropractic Society, and as dean of the Academy of Chiropractic Orthopedists.

consistent with the diagnosis or the findings between April 4 and June 8, 1984. Charles B. Johns[8] testified that the treatments given by Cherubino were excessive after the initial four to six weeks and were not reasonable or necessary.

Cherubino argues that the board could not rely properly on the opinions of these experts because they were formed without the benefit of Cherubino's patient progress notes. These experts based their conclusions on Ellis's medical records, including the hospital report relating to his injury and Cherubino's letters to the insurance company describing the patient's progress.[9] Cherubino's medical report of April 10, 1984, included the results of his orthopedic examination, neurological examination, and X-ray examination, as well as his clinical comments, diagnosis, and recommendation for treatment. His letters of May 7 and June 13, 1984, noted that the patient's pain and spasm had been reduced and that the range of motion had improved. The fact that Johns and Steingisser did not have the patient progress notes before them when they formed their judgment does not negate their testimony. The board admitted Cherubino's handwritten progress notes in evidence, expressly finding that these notes were consistent with Johns's testimony that Ellis's condition did not warrant continuing the therapy. The board "is free to evaluate evidence in light of its own technical expertise." *Langlitz* v. *Board of Registration of Chiropractors, supra* at 381. The board, after engaging in its own evaluation of the progress notes as well as the other evidence before it, could conclude that the forty-four treatments in six months were not justified by the patient's condition.

---

[8] Johns has practiced chiropractic in the Commonwealth for over twenty-five years. He is a fellow of the Academy of Chiropractic Orthopedists, has been an associate examiner for the Board of Examiners, and is a member of the American Council on Chiropractic Orthopedics and of the American Council on Roentgenology.

[9] Steingisser based his opinion on the hospital report, the list of charges and treatment from April 4 through June 8, 1984, Cherubino's medical report of April 10, 1984, and Cherubino's May 7, 1984, progress report to Allstate Insurance Company (Allstate). Johns based his opinion on all of the above documents, as well as Cherubino's June 13, August 1, and October 26, 1984, progress reports to Allstate, which included a list of charges and treatment through October 15, 1984.

Cherubino testified that Ellis's continued complaints of pain due to racquetball necessitated further treatment. In its decision, the board "discounted" this testimony "in large part, both in light of all the other evidence presented and by [its] opinion of the credibility of the witnesses before it." "Credibility of witnesses is for the agencies . . . and the agency has the benefit of observing the witnesses in judging credibility." *Vaspoura-kan, Ltd.* v. *Alcoholic Beverages Control Comm'n,* 401 Mass. 347, 352 (1987). The board, and not this court, has the responsibility of deciding preliminary questions of credibility and the weight of the evidence; the board was not required to believe all of the plaintiff's testimony.[10] *Maddocks* v. *Contributory Retirement Appeals Bd.,* 369 Mass. 488, 495 (1976).

The references to racquetball in the written progress notes compiled by the plaintiff did not compel the board to find that the patient required the additional treatment. The board was not required to grant credence to every entry the plaintiff had made in his written progress notes. The board was free to accept as true only a portion of the plaintiff's handwritten progress notes. The board "may disbelieve the whole or a part of a party's [or witness's] tesitmony, even where it is uncontradicted." *Calderone* v. *Wright,* 360 Mass. 174, 176 (1971), quoting *Lydon* v. *Boston Elev. Ry.,* 309 Mass. 205, 206 (1941). See P.J. Liacos, Massachusetts Evidence 131 (5th ed. 1981).

2. *Vagueness.* The plaintiff claims that 233 Code Mass. Regs. § 4.06 is unconstitutionally vague. We disagree.

" 'A law is void for vagueness if persons "of common intelligence must necessarily guess at its meaning and differ as to its application." ' *Caswell* v. *Licensing Comm'n for Brockton,* 387 Mass. 864, 873 (1983), quoting *Connally* v. *General Constr. Co.,* 269 U.S. 385, 391 (1926). '. . . [S]tatutes that do not define or relate to criminal conduct need not be drawn as precisely as statutes that touch upon criminal acts. . . . [If] neither First Amendment freedoms nor criminal conduct are concerned . . . we limit out vagueness analysis to whether [the statute or regulation] is unconstitutionally vague as applied in

---

[10] Ellis did not testify.

[the particular] case . . . .' *Caswell, supra. Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1),* 374 Mass. 547, 552, appeal dismissed for want of a substantial Federal question, 439 U.S. 803 (1978)." *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 127 (1985). Because suspension of a chiropractor's license is not penal or criminal in nature, *id.,* we apply the less strict civil standard in our analysis of 233 Code Mass. Regs. § 4.06. *Lapointe* v. *License Bd. of Worcester,* 389 Mass. 454, 462 (1983), citing *Caswell* v. *Licensing Comm'n for Brockton, supra.*

Title 233 Code Mass. Regs. § 4.06 defines "[o]verutilization of practice" as "practice excessive in quality or amount to the needs of the patient." As applied to the facts of this case, as found by the board, this regulation could be understood without any guesswork. "Persons of common intelligence" could conclude easily that a patient with an injury that normally required from four to six weeks of treatment did not need forty-four separate treatments over a six-month period, absent proven exceptional circumstances.

Title 233 Code Mass. Regs. § 4.06, when read in context, also gives a practitioner guidance. Title 233 Code Mass. Regs. § 4.03 provides, in part, that "[s]upportive procedures shall be supplemental or ancillary to the chiropractic adjustment and must not be used as an independent therapy. The use of supportive procedures MUST AT ALL TIMES be supported by a clinical rationale equivalent to present additional standards as well as ususal and customary practices" (emphasis in original). Read together, §§ 4.06 and 4.03 put the practicing chiropractor on notice that when supportive procedures are administered, they must be justified by the clinically diagnosed needs of the patient and may not constitute the primary form of therapy. The board found that Cherubino repeatedly treated his patient with the same three costly supportive procedures without furnishing sufficient justification. A person of common intelligence would have known that such behavior was within the scope of activity proscribed by 233 Code Mass. Regs. § 4.06. We note that the standard in this case — treatment not "excessive in quality or amount to the needs of the patient" — is cer-

tainly clearer than the regulation which disciplined accountants for acts "discreditable to the profession," [11] which the court in *Gurry, supra* at 126-127, refused to hold unconstitutionally vague.

3. *The board's authority to issue sanctions.* The plaintiff argues that the board lacks authority to impose sanctions for violations of 233 Code Mass. Regs. §§ 4.06 and 4.07. We disagree.

"An agency . . . has considerable leeway in interpreting a statute it is charged with enforcing." *Grocery Mfrs. of Am., Inc.*, v. *Department of Pub. Health,* 379 Mass. 70, 75 (1979). See *Manning* v. *Boston Redevelopment Auth.*, 400 Mass. 444, 453 (1987). The board properly could conclude, on remand by the single justice, that "[o]verutilization of practice" and "[i]mproper charges" are forms of deceit or gross misconduct subject to discipline under G. L. c. 112, § 61. See *Leigh* v. *Board of Registration in Nursing,* 395 Mass. 670, 675 (1985).

The board's regulations must bear only a rational relation to the enabling statute. *Citizens for Responsible Envtl. Management* v. *Attleboro Mall, Inc.*, 400 Mass. 658, 669 (1987). *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 524 (1979). "[T]he Legislature through the board has provided for the imposition of sanctions 'to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice [chiropractic] will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency or a lack of honesty and integrity.'" *Keigan* v. *Board of Registration in Medicine,* 399 Mass. 719, 722 (1987), quoting *Matanky* v. *Medical Examiners,* 79 Cal. App. 3d 293, 305 (1978). Imposing sanctions for excessive treatment and charges bears a rational relation to the Legislature's goal of safeguarding the public welfare through regulation of the chiropractic profession.

4. *Was the board's action arbitrary or capricious?* The plaintiff maintains that the board's amended decision was arbi-

---

[11] 252 Code Mass. Regs. § 3.05(1) (1986).

trary and capricious because it reversed its earlier finding that there was no evidence of a violation of G. L. c. 112, § 61.

The board's amended finding of a violation of G. L. c. 112, § 61, when it originally failed to make this finding, does not constitute an arbitrary or capricious action. The board states in its amended decision that its failure to find violation of § 61 was "inadvertent." There is nothing in the record to refute this statement.

General Laws c. 112, § 61, authorizes the board to suspend or revoke the license of a practitioner who is found to be guilty of "deceit [or] . . . gross misconduct in the practice of his profession." A violation of 233 Code Mass. Regs. §§ 4.06 and 4.07 falls within the conduct proscribed by G. L. c. 112, § 61. The board was not required to show additional wrongdoing on the part of the chiropractor to justify its imposition of sanctions. Where there is substantial evidence in the record to support the board's decision, we conclude that it was not arbitrary or capricious as matter of law. See *Massachusetts Elec. Co.* v. *Department of Pub. Utils.*, 376 Mass. 294, 312 (1978).

5. *Exclusion of two documents.* The board did not err in excluding the typewritten transcription of Cherubino's handwritten patient progress notes and the chart summarizing the patient's visits to his office, both prepared by his counsel. The board did admit the handwritten notes in evidence, and they appear to us to be sufficiently legible. The board was within its discretion to exclude the verbatim transcription and the chart, both of which it had admitted as chalks. *Dyecraftsmen, Inc.* v. *Feinberg,* 359 Mass. 485, 487 (1971). P.J. Liacos, Massachusetts Evidence 403-404 (5th ed. 1981).

The matter is remanded to the single justice, and a judgment affirming the decision of the board is to be entered.

*So ordered.*